**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Mona K Crossman, Individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No.: 2:07-116-CWH |
| vs. | ) ) | |
| Chase Bank USA NA, JP Morgan Chase & Co | ) ) | |
| Defendants. | ) ) | |
| | ) | **ORDER** |
| Mona K Crossman, Individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No.: 2:07-120-CWH |
| vs. | ) ) | |
| JP Morgan Chase Bank USA NA, JP Morgan Chase & Co, | ) ) ) | |
| Defendants. | ) ) ) | |

    The plaintiff has brought this action pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681, *et seq*. The plaintiff received two direct mail pieces from the defendants stating, "this prescreened offer of credit is based on information in your credit report that you meet certain criteria." The first stated: "Right now you are pre-qualified* for a new home mortgage or for a refinance of your existing mortgage with loan amounts up to $417,000.00 or

more." The asterisk that followed "pre-qualified" led to the following footnote on the reverse side of the letter:

> You are pre-qualified for a first mortgage fixed term conventional loan or a fully amortizing adjustable rate mortgage. All loans are subject to credit and property approval. Once you apply, your application will be processed and fully evaluated in accordance with Chase's underwriting criteria. The final amount of your loan will be based on information obtained and verified as your application is being processed, including, but not limited to the credit bureau information, appraisal/property valuation, verification of income and equity in your home. For down payment less than 20%, and loan-to-value ratio greater than 80%, mortgage insurance (MI) is required and MI charges will apply.

The back of the letter states: "This prescreened offer of credit is based on information in your credit report indicating that you meet certain criteria. This offer is not guaranteed if you do not meet our criteria, including providing acceptable property as collateral."

The second direct mail piece stated: "[a]s a preferred Chase customer, you're pre-qualified for a Chase home loan of up to $100,000 or more." Both pieces stated that the defendants have a wide array of homeowner lending options that the plaintiff could use for mortgage money, refinancing, or "just quick cash." The letters instructed the plaintiff to call the defendants at an 800 number and take advantage of the advertised savings.

On January 12, 2007, the plaintiff filed these actions against the defendants. The plaintiff seeks statutory damages for willful noncompliance with the FCRA and punitive damages. The plaintiff alleges that the defendants violated the FCRA when they accessed her credit report in order to send her the two direct mail pieces. The plaintiff brings this action on behalf of all others similarly situated with addresses in South Carolina. No motion to certify the class has been made to date, and the plaintiff alleges that the class is so numerous that joinder of all members is impracticable.

On March 14, 2007, the defendants filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The defendants claim that they sent the plaintiff a firm offer of credit that complied with the FCRA and that the plaintiff fails to allege a willful violation of the FCRA.  The Court has had the benefit of oral argument.

I. Standard for Deciding a Rule 12(b)(6) Motion to Dismiss

When a plaintiff has failed to state a claim for which relief can be granted, a defendant may move the court to dismiss that claim.  Fed. R. Civ. P. 12(b)(6).  A court must accept as true all of the factual allegations contained in the complaint.  Bell Atlantic Corp. v. Twombley, 127 S.Ct. 1955, 1965 (2007).  A pleading must set forth "a short and plain statement . . . showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual obligations must be enough to raise a right to relief above a speculative level.  Bell Atlantic Corp. v. Twombley, 127 S.Ct. at 1964-65.  Therefore, a court should examine a complaint for plausibility when considering a 12(b)(6) motion to dismiss.  Id. at 1965-66.

II. Fair Credit Reporting Act

In recognition of the importance of credit reporting to the nation's banking system and its effect on consumers' personal finances, Congress enacted the FCRA to "require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, insurance, and other information in a manner that is fair and equitable to the consumer." 15 U.S.C. §1681(b).  When the consumer has not initiated a transaction with the creditor, the FCRA allows creditors to access the consumer's credit report only under narrowly defined

circumstances. 15 U.S.C. §1681b(c)(1). For instance, the FCRA authorizes a creditor to access a consumer's credit report "in connection with any credit or insurance transaction," but only where "the transaction consists of a firm offer of credit or insurance." 15 U.S.C. 1681b(c)(1)(B)(i). The FCRA imposes civil liability on any "person," which includes any corporation or other entity, who willfully or negligently fails to "comply with any requirement imposed" under the FCRA. 15 U.S.C. §§1681a(b), 1681n, and 1681o. In this case, the plaintiff asserts that the defendants willfully obtained her credit report for a purpose not authorized by the FCRA because the two direct mail pieces at issue do not constitute firm offers of credit. 15 U.S.C. §§1681b(f), 1681n.

  A. Firm Offer of Credit

The FCRA authorizes a creditor to access a consumer's credit report in connection with a firm offer of credit. 15 U.S.C. §1681b(c)(1)(B)(i). A firm offer of credit is "any offer of credit . . . to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for that offer." 15 U.S.C. §1681a(l). A firm offer of credit may be conditioned on: (1) the consumer meeting specific criteria bearing on creditworthiness, (2) verification that the consumer continues to meet specific criteria used to select the consumer for the offer, and (3) collateral that is a requirement for the extension of credit. Id.[1] The Fifth Circuit Court of Appeals has said that

---

[1] 15 U.S.C. 1681a(l) provides:
The term "firm offer of credit or insurance" means any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer, except that the offer may be further conditioned on one or more of the following:
  (1) The consumer being determined, based on information in the consumer's application for the credit or insurance, to meet specific criteria bearing on credit worthiness or

a firm offer of credit under the FCRA is really a firm offer if the consumer meets certain criteria. Kennedy v. Chase Manhattan Bank USA, NA, 369 F.3d 833, 841 (5th Cir. 2004).[2]

When the consumer has not initiated a transaction with a creditor, who accesses the consumer's credit report for use in a firm offer of credit, the creditor must make the following disclosures in extending the firm offer: (1) consumer credit reports were used in connection with the offer; (2) the consumer was selected to receive the offer because she satisfied the criteria for creditworthiness used by the offeror; (3) if the consumer does not continue to meet the criteria for a finding of creditworthiness or fails to provide the required collateral, then the credit may not be extended; (4) the consumer may decide to not receive any future credit offers by

---

        insurability, as applicable, that are established--
           (A) before selection of the consumer for the offer; and
           (B) for the purpose of determining whether to extend credit or insurance pursuant to the offer.
    (2) Verification
           (A) that the consumer continues to meet the specific criteria used to select the consumer for the offer, by using information in a consumer report on the consumer, information in the consumer's application for the credit or insurance, or other information bearing on the credit worthiness or insurability of the consumer; or
           (B) of the information in the consumer's application for the credit or insurance, to determine that the consumer meets the specific criteria bearing on credit worthiness or insurability
    (3) The consumer furnishing any collateral that is a requirement for the extension of the credit or insurance that was--
           (A) established before selection of the consumer for the offer of credit or insurance; and
           (B) disclosed to the consumer in the offer of credit or insurance.

[2] The plaintiff disputes this characterization and argues that the Court should give "firm offer" its ordinary meaning. However, Congress has specifically defined a firm offer of credit in the FCRA, and this Court should define the term according to the statute, 15 U.S.C. §1681a(l). "When a statute includes an explicit definition, [courts] must follow that definition, even when it varies from a term's ordinary meaning." Stenberg v. Carhart, 530 U.S. 914, 942 (2000).

prohibiting the use of information contained in her credit file that is not initiated by her; and (5) the consumer may exercise that right by calling a given toll-free number or by contacting the credit agency at a stated address. 15 U.S.C. §1681m(d)(1)(A)-(E).

The plaintiff claims that the defendants violated the FCRA when they accessed the plaintiff's credit report because the letters do not constitute firm offers of credit under the FCRA and because the defendants failed to make disclosures required by the FCRA.

### 1. Whether the letter is a firm offer

The Fourth Circuit Court of Appeals has not addressed the issue of what constitutes a firm offer of credit under the FCRA. However, the Court concludes that the letters at issue in this case fit within the FCRA's definition of "firm offer of credit." First, the letters offer credit to a consumer that will be honored if the consumer is determined, based upon information in a credit report, to meet specific criteria used to select the consumer for the offer. 15 U.S.C. §1681a(l). The plaintiff does not allege that the defendants would have denied her credit if she had applied for the advertised home loans or that the defendants failed to use specific criteria in selecting her for the offer. Second, the offers condition the credit upon the consumer's application, the verification of the consumers' information, and the furnishing of collateral. 15 U.S.C. §1681a(l)(2).

The defendant has moved that this Court dismiss the plaintiff's complaint based on two district court decision in New York, which concerned "virtually identical" pieces of direct mail. Defs.' Mot. to Dismiss, 7. In <u>Nasca v. J.P. Morgan Chase Bank, N.A.</u>, J. P. Morgan Chase Bank, a defendant in this action, sent the plaintiff a letter stating that she was pre-qualified for a home loan up to $417,000.00. <i>See</i> <u>Nasca v. J.P. Morgan Chase Bank, N.A.</u>, 2007 WL 678407, *3

(S.D.N.Y. 2007).  The court held that the direct mail was a firm offer of credit that complied with the FCRA because the mailer offered credit that would be honored if Nasca was determined to meet specific criteria used to select her for the offer and because the mailer made the dislosures required by the FCRA.  The court dismissed the complaint because the plaintiff was unable to point to any violation of the FCRA.  In Soroka,  J.P. Morgan Chase Bank sent the plaintiff a letter stating that she qualified for a home loan with a minimum value of $15,000.00 or a minimum value of $10,000.00 in Michigan.  Soroka v. J.P. Morgan Chase & Co., 2007 WL 895249, *5 (S.D.N.Y. 2007).  The court dismissed the plaintiff's claims under the FCRA and held that the direct mail piece was a firm offer of credit that complied with the FCRA.  The court concluded that the conditions attached to the offer were those explicitly permitted by the FCRA, and the mailer made the disclosures required of firm offers of credit by the FCRA.

> 2.  Whether the defendants' direct mail pieces letter included the disclosures required by the FCRA

The plaintiff claims that the defendants' direct mail pieces fail to make the disclosures required by the FCRA in firm offers of credit.  However, both pieces include the five disclosures required by the FCRA.

> (1) Consumer credit reports were used in connection with the offer.

The defendants' direct mail pieces make this disclosure when they state respectively: "information from a credit bureau was used in connection with this offer" and "this prescreened offer of credit is based on information in your credit report."

> (2) The consumer was selected to receive the offer because she satisfied the criteria for creditworthiness used by the offeror.

The defendants' direct mail pieces make this disclosure because both state: "this

prescreened offer of credit is based on information in your credit report that you meet certain criteria."

> (3) If the consumer does not continue to meet the criteria for a finding of creditworthiness or fails to provide the required collateral, then the credit may not be extended.

The defendants' direct mail pieces make this disclosure by stating respectively: "this offer is not guaranteed if you do not meet our criteria" and "all loans are subject to credit and property approval."

> (4) The consumer may decide to not receive any future credit offers by prohibiting the use of information contained in her credit file that is not initiated by her.

The defendants' direct mail pieces include this disclosure. Both direct mail pieces state: "you can choose to stop receiving prescreened offers of credit from this and other companies."

> (5) The consumer may exercise that right by calling a given toll-free number or by contacting the credit agency at a stated address.

Both of the defendants' direct mail pieces give a toll free number and a mailing address for opting out of prescreened offers of credit.

3.  Whether a firm offer must make additional disclosures

The plaintiff claims that the defendants' direct mail pieces violate the FCRA because they fail to disclose pricing information. In a credit transaction, the interest rate and repayment period determine the price of credit. The plaintiff concedes that the FCRA does not require concrete pricing terms but contends that a firm offer of credit must provide a range or estimate. The plaintiff cites numerous unpublished opinions from other jurisdictions in which an offer

included some pricing information.[3]  However, none of these cases held that pricing information must be included in a firm offer of credit, and the FCRA does not require a lender to specify a price or estimated price range in a firm offer of credit.  This Court will not imply such an additional disclosure requirement.  *See* TRW, Inc. v. Andrews, 534 U.S. 19, 28 (2001).  Because the FCRA does not explicitly require the disclosure of a price or estimated price range, the defendants did not violate the FCRA by failing to include such terms in the firm offers of credit.

4.  Whether a firm offer must be of "sufficient value"

The plaintiff claims that the letters do not qualify as a firm offer of credit because they are not of "sufficient value."  The Seventh Circuit Court of Appeals has held that in order to

---

[3] *See* Murray v. HSBC Auto Finance, Inc., 2006 WL 2861954 (N.D. Ill. 2006).  The defendant sent the plaintiff a firm offer that stated rates and terms would vary but provided an example of possible savings when debtor refinanced a $20,000.00 five-year loan after four months.  The court held that the FCRA does not require an offer to contain a specific amount of credit or interest rate and granted summary judgment to defendant.

McDonald v. Nelnet, Inc., 2007 U.S. Dist. Lexis 12608 (E.D. Mo. 2007). The defendant sent the plaintiff a firm offer for student loan consolidation.  The offer stated that the interest rate is calculated by taking a weighted average of rates on the loans rounded up to the nearest one-eighth percent, not to exceed 8.25%.  The court stated "Congress carefully crafted its definition of 'firm offer' and chose not to require that the lender specify particular loan terms."  The court held that the offer complied with the FCRA's requirements and granted the defendants' motion to dismiss.

Dixon v. Shamrock Fin. Corp., 2007 WL 1170639 (D. Mass. 2007).  The defendant mailed the plaintiff an offer for a free consultation to restructure his debt.  The letter contained no pricing information.  The court held that the four corners of the offer satisfied the statutory definition of a firm offer of credit and dismissed the complaint because the plaintiff failed to allege that he would have been denied credit despite meeting creditworthiness requirements or that the offer to extend credit was something other than what it purported to be.

Klutho v. GE Money Bank, 2007 WL 162291 (E.D. Mo. 2007).  The plaintiff complained that the letter sent by the defendant violated the FCRA because it did not include the specific amount of credit being extended, the interest rate, amortization period, or method of computing the interest.  However, the court held that "none of these terms are required in order to determine whether the letter qualifies as a 'firm offer of credit' under the FCRA."  The court granted the defendant's motion to dismiss for failure to state a claim because the defendant sent the plaintiff a firm offer of credit that complied with the FCRA.

qualify as a firm offer of credit, a solicitation must have "sufficient value" to the consumer in addition to meeting the FCRA's requirements.  Cole v. U.S. Capital, Inc., 389 F.3d 719, 726 (7th Cir. 2004).  A car dealership sent Cole an advertisement offering "automotive credit" that could be applied to the purchase of a vehicle.  Id. at 723.  The advertisement offered a minimum loan of $300.00 towards the purchase of cars that cost many thousands of dollars.  Id.  The court could not determine whether the offer was likely to be honored because the language on the flyer was contradictory.  The court reasoned that:

> A definition of "firm offer of credit" that does not incorporate the concept of value to the consumer upsets the balance Congress carefully struck between a consumer's interest in privacy and the benefit of a firm offer of credit for all those chosen through the pre-screening process.  From the consumer's perspective, an offer of credit without value is the equivalent of an advertisement or solicitation.  It is clear that Congress did not intend to allow access to consumer credit information for catalogues and sales pitches.

Id at 726-27.  The court concluded that the purported offer of automotive credit was a sham which did not offer a credit product of any value.

This Court does not import a requirement of "sufficient value" into a statutory definition on the basis of the Seventh Circuit's holding.  As the Nasca court noted, "if Congress believes that the statutory definition of 'firm offer of credit' does not adequately protect a consumer's interest in the privacy of her credit information, it is for Congress to act; it is not for the judiciary to add requirements that do not exist in the statute."  Nasca v. J.P. Morgan Chase Bank, N.A., 2007 WL 678407, *4 (S.D.N.Y. 2007).

However, the facts of this case are distinguishable from those in Cole.  First, in this case, the defendants offer a substantial amount of credit.  One direct mail piece does not state a minimum loan amount but offers a mortgage of up to $417,000.00; the other states that the

minimum loan amount is $15,000.00 or $10,000.00 in Michigan.  Second, the defendants were not attempting to sell the plaintiff a depreciating asset in connection with the offer of credit.  Third, the language in the direct mail pieces is not contradictory and appears to indicate that the defendants would offer the plaintiff a home mortgage or an equity line if she applied and were then determined based on her financial data to meet the relevant criteria.  Therefore, even if the defendants' direct mail pieces were subject to the "sufficient value" test applied in Cole, the defendants' offer would not be found to be a sham or offer without "sufficient value" because the letters offer the plaintiff either a mortgage of $15,000 or a mortgage of up to $417,000.

Conclusion

The plaintiff has not identified a specific violation of the FCRA.  The defendants sent the plaintiff firm offers of credit that comply with the FCRA, and the defendants' offers make the disclosures required by the FCRA.  According to the plaintiff, discovery will reveal whether the loan amount is appreciably different from a non-prescreened offer of credit, and then the plaintiff will be able to allege how the defendants violated the FCRA with greater detail.  Pl.'s Resp. to Defs.' Mot. to Dismiss, 6, 25, 29, 33, 35.   However, the plaintiff's complaint does not allege enough facts to raise a reasonable expectation that discovery will reveal evidence that the defendants violated the FCRA when they sent the plaintiff the two direct mail pieces at issue.  The Supreme Court has held that dismissal of a complaint under such circumstances is proper.  Bell Atlantic v. Twombly, 127 S.Ct. 1955, 1967 (2007) (stating that dismissal of a complaint devoid of plausibility is proper in order to avoid "the potentially enormous expense of discovery in cases with no reasonably found hope that the discovery process will reveal relevant evidence" to support the plaintiff's claim).

Accordingly, the defendants' motion to dismiss is granted.

**AND IT IS SO ORDERED.**

_____
**C. WESTON HOUCK**
**UNITED STATES DISTRICT JUDGE**

September 12, 2007
Charleston, South Carolina